Argued and submitted November 30, 1983, reversed in part; remanded with instructions in part February 22, 1984

In the Matter of the Adoption of
Robert Steven DaCosta, Jr., a Minor.

DaCOSTA et al,
*Respondents,*

*v.*

ADAMS,
*Appellant.*

(B-3923-83; CA A27660 (Control))

ADAMS, aka DaCosta,
*Petitioner-Appellant,*

*v.*

DaCOSTA,
*Respondent.*

(82-4708-NJ-1; CA A27661)
(Cases Consolidated)
677 P2d 65

Timothy C. Gerking, Medford, argued the cause for appellant. With him on the brief were Brophy, Wilson & Duhaime, Medford.

Colette Boehmer, Medford, argued the cause for respondents. With her on the brief was Jackson County Legal Services.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Mother appeals from an order denying her petition for modification of the decree dissolving her marriage to father to allow and specify her visitation rights with their minor son and also from the decree of adoption of the child by father's present wife. The petitions were consolidated for hearing in the trial court and remain consolidated in this appeal. On *de novo* review, we reverse and remand.

The child who is the subject of this proceeding was born in 1973 at Van Nuys, California. Mother and father separated in 1975, and both initially continued to reside in the Van Nuys area. Until mother moved to Arizona in 1977, she maintained frequent contact with the child.

After mother moved to Arizona, father filed dissolution proceedings, and a final decree of dissolution was entered in March, 1978. By the terms of the decree, father was awarded custody of the child; mother, who had limited financial resources, was not ordered to pay child support and no provision for visitation was made.

Mother's last visit with the child was in March or April, 1979, in California. In 1980, father moved to Oregon. Mother maintained contact with the child by telephone calls of disputed frequency. In the first part of 1981, mother talked with the child "quite a few times," until father and child moved to a place where there was no telephone. Mother then wrote and requested that father have the child call her collect periodically, which he did 10 or 12 times during the latter part of 1981.

In July, 1982, mother attempted to visit the child in Oregon. She communicated with father to confirm the arrangements, but decided not to make the trip to Oregon after father advised her that he would permit the visit only in his presence. In August or September, 1982, mother sent the child a substantial gift of clothing; she sent him additional gifts of clothing in October and November, 1982. Mother had several telephone conversations with the child in 1982, the last one on December 19.

On December 27, 1982, mother filed the petition to modify the California decree to provide for her visitation with her son and to specify the times and conditions on which she

could exercise visitation. On January 11, 1983, father and his present spouse filed the petition for adoption of the child. The trial court denied mother's petition to modify the dissolution decree to allow visitation, found that her consent was not a prerequisite to the adoption and granted the petition for adoption.

ORS 109.324 provides:

"[I]f the court finds that [a] parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions. * * *"

The trial court based its order on its finding that mother wilfully neglected without just and sufficient cause to provide proper care and maintenance for the child for a period of one year immediately preceding the filing of the adoption petition. Mother challenges that finding, contending that the facts do not establish neglect. We agree.

Under ORS 109.324, a petitioner is not required to prove that the responding parent intended to abandon all parental rights. *Dunne v. McCashum,* 13 Or App 66, 70, 508 P2d 821 (1973). However, to be "without just and sufficient cause" neglect must be intentional, deliberate or wilful. *See Wilcox v. Alexander et ux,* 220 Or 509, 515, 349 P2d 862 (1960). Although incidental contributions and communications may be disregarded, certain minimal expressions of concern, if present, indicate that a parent has not neglected the child within the statutory meaning. *Dunne v. McCashum, supra,* 13 Or App at 71. Evidence of such parental concern is ordinarily measured in terms of money payments and personal contacts. *See Swarthout v. Reeves,* 26 Or App 763, 768, 554 P2d 617 (1976). Here, in light of the facts that the decree of dissolution placed on mother no obligation to make support payments and that she had limited finances, we do not consider her lack of financial contribution convincing evidence of neglect. To

determine whether she has demonstrated the minimal level of concern, we therefore focus on evidence of her contacts with her son. We conclude that, although her efforts have been less than exemplary, her contacts were more than incidental.

■     In the relevant one-year period preceding the filing of the adoption petition, mother periodically, albeit irregularly, made telephone contact with her child. Although the lack of a telephone at the child's residence precluded her from calling the child directly, she initiated and facilitated communication by requesting that he call her collect. During that period, she sent him gifts on three separate occasions. Moreover, the decree of dissolution provided her with no visitation rights. The substantial distance between her residence and that of the child made casual personal visitation expensive, and there was evidence it would have entailed financial hardship for her to travel to Oregon. Although her failure to visit the child was not wholly justified by the "difficulty" created by the conditions imposed by father, *see Cramer v. Leistikow,* 37 Or App 539, 543, 588 P2d 53 (1978), her efforts to enjoy visitation in July, 1982, cannot be ignored. From her subsequent effort to establish regular visitation rights through modification of the dissolution decree, which antedated the filing of the adoption proceedings, we infer a genuine concern for maintaining and strengthening the parent-child bond. We hold that mother has not "neglected" the child within the meaning of ORS 109.324, so as to permit an involuntary severance of the parental relationship without her consent. The order of the trial court authorizing the adoption to proceed without her consent and the decree of adoption are reversed.

Because the trial court found that the adoption could proceed notwithstanding mother's objection and announced that it would grant the petition to adopt, it denied her petition for modification of the decree of dissolution to establish reasonable visitation rights. Therefore, the case is remanded to the trial court for a hearing on that petition.

Decree of adoption reversed; remanded for a hearing on mother's petition to determine and specify her visitation rights. Costs to appellant.