In the Matter of the Adoption of
Adenea Marie Richardson, A Child.

Lawrence and Louise THOMPSON,
*Appellants,*

*v.*

Kathleen Richardson HARRIS,
*Respondent.*

(A-682; CA A61918)

801 P2d 867

Clayton C. Patrick, Salem, argued the cause for appellants. With him on the briefs was J. David Coughlin, Baker.

Emil R. Berg, Ontario, argued the cause for respondent. With him on the brief was Oregon Legal Services Corporation, Ontario.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Appellants (petitioners) appeal from a judgment that dismissed their adoption petition. They are child's maternal grandmother and her husband. Respondent (mother) refused to consent to the adoption. The court ruled that mother's consent was required and dismissed the petition. *See* ORS 109.324. We review *de novo,* ORS 19.125(3), and affirm.

Child is eleven years old. For years, mother and grandmother and her husband have quarreled over her custody. Mother had abused alcohol and had been married to a man who physically abused both her and child. Alleging that mother did not properly care for child, petitioners initiated a guardianship proceeding in September, 1984, and asked for custody of child.[1] As a result of that proceeding, petitioners obtained visitation rights, but mother retained custody. At that time, mother worked as a long-haul truck driver. In 1985, she and her husband took child with them on the road for seven months. Child became undernourished, unclean and in poor health. After her return, petitioners asked the court to hold mother in contempt for violating their visitation rights. The record does not disclose what disposition the court made of that request, but it required mother to undergo counseling through the Washington Children's Protective Service (CPS).

In April, 1986, mother recognized her inability to provide child with a stable home and consented to her placement with petitioners. In August, 1986, petitioners, again with mother's consent, became child's legal guardians. Child has lived with petitioners since that date. In 1987, mother obtained annulment of her marriage. She remarried in 1988 and now lives in Kennewick, Washington, where her new husband has an extensive, supportive family. Mother received counseling for the abuse that she suffered from her former husband, and she has completed alcohol treatment. She testified that she no longer drinks. At the time of the petition, she had been employed for eight months as a waitress at a truck stop in Pasco.

Petitioners initiated this proceeding on July 12, 1989, alleging that mother had wilfully deserted and neglected,

---

[1] The record does not disclose in what court the guardianship proceeding was filed.

without just and sufficient cause, to provide proper care and maintenance for child in the year preceding the petition.[2] To adopt child without mother's consent, petitioners must establish by clear and convincing evidence that she wilfully deserted or neglected her daughter for the preceding year. *Zockert v. Fanning,* 310 Or 514, 800 P2d 773 (1990); *Chaffin v. Palumbo,* 99 Or App 312, 315, 781 P2d 1247 (1989). The court held that mother's consent was required and dismissed the petition.

■    Ordinarily, we evaluate neglect by the presence or absence of minimal expressions of concern, which may be measured in terms of money payments and personal contacts. *Mead v. Roberts,* 74 Or App 238, 242, 702 P2d 1134 (1985). Mother did not provide support for child in the preceding year. She had been employed as a truck driver the first month, unemployed for three months and then employed as a waitress for the remaining eight months. On the other hand, grandmother's husband has been a veterinarian for twenty-five years and is employed by the federal government in Baker City. He and grandmother are building a new home adjacent to their present one. They are financially secure and did not request that mother support child during the years that they have been guardians. In this context, mother's failure to provide support for child has less significance. *See DaCosta v. Adams,* 67 Or App 84, 87, 677 P2d 65 (1984).

Mother did not visit child during the year preceding the filing of the petition. She explained, however, that she was "getting her act together." Mother had passed through Baker City on a truck trip, but the record is not clear whether it occurred during the year preceding the filing of the petition. The record is clear that she had also passed through in previous years without visiting child, but she testified that her

_____

[2] ORS 109.324 provides in part:

"[I]f the court finds that [a] parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions."

former husband had, on at least one occasion, prevented her from visiting. She also knew that petitioners were able to take good care of child.

Mother did try to contact child by telephone in the year preceding the filing of the petition. She made one, possibly two, telephone calls in that year. Grandmother's husband, however, testified that he "got rather angry" when mother called and he refused to let her speak to child until she visited. He stated that he felt that mother's reasons for not visiting were "a bunch of lies." Mother testified that, when she called in late 1988, grandmother screamed at her and did not let her speak to child. Mother did not contact child because she was prevented from doing so by petitioners. *See Chaffin v. Palumbo, supra,* 99 Or App at 315-16.

Mother also wrote to child, although infrequently, during the year preceding the filing of the petition. Grandmother's husband testified that mother wrote child "very nicely written" postcards expressing her love.[3] She wrote three postcards to child in July, 1988, and the record does not show that mother did not send them, or some of them, during the year preceding July 12, 1989. Mother wrote to child again in August, 1988.

Although mother's contacts with child by mail and telephone during the year preceding the filing of the petition were few, she did make the efforts to contact child on the occasions we have mentioned. Petitioners discouraged her efforts. We cannot say on this record that there is clearly and convincingly an absence of minimal expressions of concern. We have also evaluated mother's actions and concern for her child in light of all the circumstances in the record.[4] She testified that she had placed child with petitioners, who could and did give child adequate care, because she "thought it was in [child's] best interests." Mother stated: "I didn't desert her. I put her where she would be safe. My life was in turmoil." Mother took substantial steps to stabilize her life, evidenced

---

[3] Mother wrote to child five times in 1987.

[4] The court interviewed child *in camera* and found that child "doesn't want to lose her mother." The court also was concerned that the "finality" of adoption would sever the relationship of mother and child. We note that grandparents still have custody of child after dismissal of their petition.

by significant success during the year preceding the filing of the petition. Her remarriage remained stable and supportive, she was steadily employed during the last eight months of that year and she had ceased to abuse alcohol.

We conclude that petitioners did not establish by clear and convincing evidence that mother had wilfully neglected child. *See Street v. Gibson,* 60 Or App 768, 774, 655 P2d 604 (1982), *aff'd* 295 Or 112 (1983).[5] The court correctly ruled that mother's consent to the adoption was required. Accordingly, it properly dismissed the petition.[6]

Affirmed.

---

[5] Petitioners also assert that mother wilfully deserted child. Wilful desertion requires evidence of voluntary conduct that evinces "a settled purpose to forego all parental duties and to relinquish all parental claims to the child." *Mead v. Roberts, supra,* 74 Or App at 242, *citing Omlie et ux v. Hunt,* 211 Or 472, 482, 316 P2d 528 (1957). Petitioners have not shown by clear and convincing evidence that mother wilfully deserted child.

[6] Mother represented herself at the hearing. In the light of our disposition of this case, we do not address respondent's cross-assignment of error respecting appointment of counsel. *See Zockert v. Fanning, supra.*